**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 12-cv-01188-CMA-KMT

ANTONIO DELAROSA, and
ROSANNA MENDOZA-RIOS,

    Plaintiffs,

and

The Phoenix Insurance Company,

    Plaintiff-Intervenor,

v.

COYOTE PUMPING SERVICES, INC., and
THE MINE SUPPLY COMPANY (IMSCO),

    Defendants.

**ORDER ON CHOICE-OF-LAW ISSUE**

This matter is before the Court on Plaintiffs' "Memorandum on Choice of Law" (Doc. # 36) and "Defendant Coyote Pumping Services, Inc.'s Motion for Application of Colorado Law to Plaintiff Antonio Delarosa's Claims" (Doc. # 37). The Court's jurisdiction arises under 28 U.S.C. § 1332 (diversity jurisdiction). For the reasons discussed below, the Court will apply New Mexico law to Plaintiffs' negligence and strict liability claims, but Colorado law will govern the claim for loss of consortium.

## I. <u>BACKGROUND</u>[1]

Plaintiffs Antonio Delarosa and Rosanna Mendoza-Rios, who claims to be Delarosa's common-law wife, are citizens and residents of Colorado and were domiciled in Colorado at all times relevant to their Complaint. (Doc. # 1 at 1.) Defendant Coyote Pumping Services, Inc. ("Coyote") was, at all times relevant to the Complaint, a New Mexico corporation domiciled in New Mexico with its principal place of business in Albuquerque. (*Id.*) Defendant The Mine Supply Company ("IMSCO") was, at all times relevant to the Complaint, a New Mexico company.[2] (*Id.* at 2.)

In January 2010, Delarosa was hired by Ames Construction Company ("Ames"), a Minnesota corporation authorized to do business in Colorado. (*Id.*) Ames hired Delarosa for a construction project at a sited called Abo Canyon, which is located near Belen, New Mexico. (*Id.*) On February 8, 2010, Delarosa was injured when a hose, through which concrete was being pumped, tore or ripped, causing concrete to strike Delarosa and knock him into an 80-foot-tall column (into which the concrete was being poured). (*Id.* at 3.) The hose and coupling to which the hose attached were designed, manufactured, and assembled in New Mexico. (*See id.* at 3-4.) As a result of the hose

---

[1] The following facts are taken from Plaintiffs' Complaint. (Doc. # 1.) Although the parties had contemplated briefing the choice-of-law issue "in the form of a request for partial summary judgment" (Doc. # 33 at 9), neither party did so, at least not explicitly. Further, the briefing on the choice-of-law issue was submitted well before the close of discovery. Accordingly, as opposed to requiring evidentiary support for the parties' factual assertions, the Court will accept as true the allegations in Plaintiffs' Complaint, as it would in the context of a Fed. R. Civ. P. 12(b)(6) motion to dismiss. *See, e.g.*, *Brown v. Fryer*, 12-cv-01740, 2013 WL 1191405, at *1 (D. Colo. Mar. 22, 2013) (unpublished) (addressing choice-of-law issue in context of motion to dismiss).

[2] IMSCO did not file its own briefing but, rather, has joined Coyote's motion. (Doc. # 38.)

failure, Delarosa has experienced numerous injuries, some of which may be permanent. (*Id.* at 5.)

On May 8, 2012, Plaintiffs filed their Complaint, asserting claims for negligence, strict liability on behalf of Delarosa, and loss of consortium as to Mendoza-Rios. (*See id.*) On July 23, 2012, Plaintiff-Intervenor The Phoenix Insurance Company ("Phoenix") filed a Complaint in Intervention, seeking subrogation for amounts it paid for Delarosa's workers' compensation benefits. (Doc. # 17.)

## II. **DISCUSSION**

Plaintiffs contend that New Mexico law governs their Complaint, while Defendants assert that the Court should apply Colorado law. Based on the applicable choice-of-law analysis, Plaintiffs' argument is more compelling, but only as to their claims for negligence and strict liability.

Before delving into the law, however, the Court addresses the scope of the issue presented, over which the parties disagree. Defendants assert that Plaintiffs' have requested the Court to determine what law should be applied only as to damages. (*See* Doc. # 45 at 2.) Defendants' assertion is not without merit, because Plaintiffs have failed to frame consistently the choice-of-law issue. (*Compare, e.g.* Doc. # 36 at 1 ("New Mexico law should be used as the law on damages"), *with, e.g., id.* at 10 ("This Court should designate that the law of the state of New Mexico should be utilized to determine the rights and liabilities of the Parties.").) Ultimately, though, the Court agrees with Plaintiffs that the Scheduling Order sets forth the parties' positions. (Doc. # 33 at 9 ("Plaintiff believes New Mexico law should be utilized in adjudicating this

3

matter, while Defendant Coyote Pumping Services, Inc. believes that Colorado law applies for some or all of the issues . . . .").) As such, the Court finds that, notwithstanding Plaintiffs' imperfect presentation of the issue, Defendants have been on notice of the extent of Plaintiffs' position since at least August 22, 2012, when Magistrate Judge Tafoya entered the Scheduling Order. (*See id.*) Therefore, the Court's choice-of-law determination affects the entirety of Plaintiffs' claims against Defendants.

As an additional preliminary matter, the Court rejects Defendants' argument that Colorado law presumptively governs this action because "Plaintiffs have failed to make any argument or to cite any case law demonstrating any outcome determinative conflict between the potentially applicable bodies of law" cited in their memorandum. (Doc. # 45 at 3.) To the contrary, Plaintiffs asserted that an outcome determinative conflict exists between Colorado and New Mexico law as to both comparative fault and the amount of recoverable non-economic damages. (Doc. # 44 at 3-4.) Under Colorado's comparative fault system for negligence claims, plaintiffs are barred from recovery when their negligence is as great as or greater than that of the defendants. Colo. Rev. Stat. § 13-21-111; *see, e.g.*, *Harris v. The Ark*, 810 P.2d 226, 230 (Colo. 1991) (explaining that, in a comparative negligence action, "the defendant seeks to avoid liability by refuting the plaintiff's claim of negligence or by establishing that, even if the defendant may have been negligent, the plaintiff's negligence was equal to or greater than the negligence of the defendant and is thus barred from recovery"). The same is not true, though, under New Mexico law, where "pure comparative fault applies to all negligence

cases." *Flowers v. Lea Power Partners, LLC*, 09-CV-569, 2012 WL 2922689, at *4 (D.N.M. April 17, 2012) (unpublished); *see Davis v. Portline Transportes Maritime Internacional*, 16 F.3d 532, 545 (3d Cir. 1994) (explaining that "pure comparative fault" means that "the worker may recover although his or her fault exceeds 50%"). Additionally, Colorado Revised Statute § 13-21-102.5 caps non-economic damages. Whereas, for the type of claims alleged here, New Mexico law does not. *Valencia v. Colorado Cas. Ins. Co.*, 560 F. Supp. 2d 1080, 1086 (D.N.M. Aug. 8, 2007) (restating, without contradicting, party's argument that New Mexico law does not limit noneconomic damages, as opposed to Colorado law, which "limits the recovery of damages for noneconomic loss or injury to $250,000.00, unless the court finds justification for additional damages by clear and convincing evidence"). Given these differences in New Mexico and Colorado law, which Defendants do not dispute, the Court will engage in the customary choice-of-law analysis.

**A.     NEGLIGENCE AND STRICT LIABILITY CLAIMS**

In diversity actions, the Court applies "the substantive law of the forum state, including its choice of law rules." *Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. Pepsico, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005). In tort cases, such as this one, Colorado's choice-of-law standard is the "most significant relationship" test, as articulated in the Restatement (Second) of the Conflict of Laws §§ 6, 145, 171 (1971) (the "Restatement"). *AE, Inc. v. Goodyear Tire & Rubber Co.*, 168 P.3d 507, 508 (Colo. 2007). In applying that test, the Court analyzes the following contacts:

(a) the place where the injury occurred,
(b) the place where the conduct causing the injury occurred,

>  (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and
>  (d) the place where the relationship, if any, between the parties is centered.

Restatement § 145(2). Such contacts "are to be evaluated according to their relative importance with respect to the particular issue." *Id.* Further, § 145(2) requires the Court to analyze the following factors listed in § 6 of the Restatement:

> (a) the needs of the interstate and international systems,
> (b) the relevant policies of the forum,
> (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
> (d) the protection of justified expectations,
> (e) the basic policies underlying the particular field of law,
> (f) certainty, predictability and uniformity of result, and
> (g) ease in the determination and application of the law to be applied.

The weight these factors carry often "var[ies] in importance and in application depending upon the field of law and the particular issue under consideration." *Sabell v. Pac. Intermountain Express Co.*, 536 P.2d 1160, 1164 (Colo. App. 1975). When, as here, a tort action involves claims of personal injury, "the location of the injury presumptively provides the controlling law unless some other state has a more significant relationship." *Elvig v. Nintendo of Am., Inc.*, 696 F. Supp. 2d 1207, 1210 (D. Colo. 2010).[3] Application of this presumption "furthers the choice-of-law values of certainty, predictability and uniformity of result and, since the state where the injury occurred will usually be readily ascertainable, of ease in the determination and

---

[3] This presumption "applies to personal injuries that are caused either intentionally or negligently and to injuries for which the actor is responsible on the basis of strict liability." Restatement § 146 cmt. a.

application of the applicable law." Restatement § 146 cmt. c. Because Delarosa's injury occurred in New Mexico, the Court begins with the presumption that New Mexico law governs.

Such a presumption is well supported by the relevant contacts in this case. To begin with, although Defendants deny liability for Delarosa's injuries, no doubt exists that his injury – *i.e.*, being struck by concrete and getting knocked into the support column – occurred at the Abo Canyon site, which is located in New Mexico. Defendants assert that "it was mere fortuity that this accident occurred in New Mexico" because "Delarosa would have gone anywhere his company sent him to work." (Doc. # 37 at 12. (citing *Scheer v. Scheer*, 881 P.2d 479 (Colo. App. 1994) (in negligence suit arising from a car accident, the court determined that the location of the accident was a "fortuitous occurrence")).) But conceptualizing the issue in this way injects an element of uncertainty not found in Plaintiffs' Complaint and which common sense does not support. Plaintiffs allege, and Defendants do not dispute, that the Abo Canyon project for which Delarosa was hired existed entirely in New Mexico. As compared to *Scheer*, 881 P.2d 479, in which the car accident happened to occur in Colorado, Delarosa could have been injured during his work on the Abo Canyon project only while he was in New Mexico. Moreover, Defendants' argument gains little traction in this case because Plaintiffs could just as easily assert that Delarosa's status as a Colorado citizen was fortuitous for Defendants, given that the conduct causing his injury occurred in New Mexico, where they operate their businesses.

Additionally, as just mentioned, the conduct causing Delarosa's injuries occurred in New Mexico. Defendants may be able to prove that the hose and coupling were not designed, manufactured, or assembled in New Mexico, but they have made no such argument at this point in the proceedings. Instead, Defendants contend that "to the extent Plaintiff Delarosa has suffered any damages, such as medical expense, pain and suffering, inconvenience, emotional stress, or loss of life enjoyment, [he] incurred these injuries while in Colorado." (Doc. # 37 at 12.) However, this argument confuses cause and effect and conflates injury with damages. The Restatement directs the Court to consider "the place where the conduct causing the injury occurred." Restatement § 145(2)(b). Clearly the conduct that caused Delarosa's injury consists of the actions leading up to, and culminating in, the tear or rip in the pumping hose that allowed the concrete to strike him. The Court's focus is on where such actions occurred, not on the location at which Delarosa continues to endure the lasting effects of his injuries. Similarly, medical expenses, pain and suffering, inconvenience, etc., are damages for which a plaintiff often seeks compensation because of an injury he has experienced. *See, e.g.*, *Lymon v. Aramark Corp.*, 499 Fed. Appx. 771, 776 (10th Cir. Oct. 11, 2012) (unpublished) (describing claim of "damages for personal injury"). Again, in the instant case, the Court's focus is on where the conduct causing Delarosa's injury occurred, not on where his damages have accrued. *See* Restatement § 146 cmt. d. (noting that when "conduct and injury occur in [the] same state[,]" such state "will usually be the state of dominant interest, since the two principal elements of the tort, namely, conduct and injury, occurred within its territory.").

Further, as previously noted, while Plaintiffs are Colorado citizens and residents, Defendants are New Mexico businesses, domiciled and doing business in that state at all times relevant to Plaintiffs' Complaint. Being from Colorado does not materially affect Plaintiffs' claims,[4] especially considering that any conduct by Delarosa, which Defendants might allege constitutes contributory fault, also occurred in New Mexico. *See id.* § 164 cmt. b. (explaining that when the plaintiff's conduct, "which is claimed to constitute contributory fault," occurs in the same state in which he was injured, "the local law of this state will usually be applied to determine whether the plaintiff's conduct amounted to contributory fault and if so, whether the effect of this fault is to preclude recovery by the plaintiff in whole or in part."). Finally, the parties agree that, at least as between Delarosa and Coyote, no relationship existed between the parties prior to the accident. (Doc. ## 36 at 9; 37 at 13.) Because the accident occurred in New Mexico, the relationship between the parties, if any, was also centered there.[5]

---

[4] Defendants frame this case as "aris[ing] in connection with a workers compensation claim brought by Plaintiff Antonio Delarosa against his employer, Ames Construction[,]" and they assert that "Delarosa seeks economic damages for medical expenses and lost wages in order to satisfy Phoenix's right of subrogation . . . ." (Doc. # 37 at 2, 9.) A plain reading of Plaintiffs' Complaint (Doc. # 1) and, especially, a plain reading of Phoenix's Complaint in Intervention (Doc. # 17), demonstrate that Defendants err in their conception of Plaintiffs' case. Plaintiffs seek damages – premised on negligence, strict liability, and loss of consortium claims – for injuries Delarosa suffered, while Phoenix asserts a right of subrogation "[p]ursuant to C.R.S. § 8-41-203" to recover "all monies expended to, and/or on behalf of," Delarosa (*id.* at 2). As such, Plaintiffs being from Colorado, and Delarosa having filed for worker's compensation there, does affect Phoenix's claim – a point to which, as Phoenix emphasizes, no party disagrees. (Doc. # 43 at 1-2 ("There is no legal dispute that Plaintiff DeLaRosa [*sic*] has requested and received benefits under the Colorado Workers Compensation statutory scheme. Thus, there is no dispute that Phoenix's claim of subrogation for the benefits paid also arises under the Colorado statutes.").)

[5] In asserting that Delarosa's relationship with Coyote was centered in New Mexico, Plaintiffs argue, as they do throughout their briefing, that the Court should consider a subcontract Ames allegedly entered into with Coyote. (Doc. # 36 at 9.) According to Plaintiffs, the subcontract

In addressing these contacts, the Court has also considered the factors listed in § 6 of the Restatement and has found that none of these factors alter the presumption that New Mexico law governs. In a tort case, the factors that carry the greatest weight are: (1) the needs of the interstate system; (2) the relevant policies of the forum; (3) the relevant policies of other interested states; and (4) ease of determination and application of the law to be applied. Restatement § 145 cmt. b. First, given that the only contact between the parties occurred in New Mexico, the needs of the interstate system are best satisfied by applying New Mexico law. *See, e.g.*, *Vignola v. Gilman*, 854 F. Supp. 2d 883, 888 (D. Nev. 2012) (determining that the needs of the interstate system were best satisfied by applying Colorado law given the "volume of contacts" between the parties that occurred there). Second, because Delarosa's injury and the conduct that caused it both occurred in New Mexico, New Mexico's interest in having its policies applied, in particular, its policies as to comparative fault and the amount of recoverable non-economic damages, trumps Colorado's interest. *See* Restatement § 146 cmt. d. ("The state where the defendant's conduct occurs has the dominant interest in regulating it and in determining whether it is tortious in character. Similarly, the state where the injury occurs will, usually at least, have the dominant interest in

---

states: "Any disputes arising out of this Subcontract shall be controlled by the law in effect at the location of the Project . . . ." (*Id.* at 3.) However, Plaintiffs' claims do not arise out of Ames's subcontract with Coyote, which was apparently for the provision of labor and materials. (*See id.*) Rather, they arise out of Defendants' alleged negligence and strict liability. *See, e.g.*, *Galena St. Fund, L.P. v. Wells Fargo Bank, N.A.*, No. 12-cv-00587, 2013 WL 2114372, at *5 (D. Colo. May 15, 2013) (unpublished) (noting that "[t]ort claims . . . do not arise out of a contract."). As such, the Court rejects Plaintiffs' argument to the extent it relies on the subcontract between Ames and Coyote. Thus, the Court will deny Plaintiffs' "Request to Supplement Reply Brief on Choice of Law," in which Plaintiffs seek to further their contract-based argument with additional documentary evidence. (Doc. # 46.)

determining whether the interest affected is entitled to legal protection."). Finally, ease in determining and applying New Mexico law exists in this case, given that Plaintiffs' negligence and strict liability claims are relatively straightforward and well-recognized claims under New Mexico law. *See, e.g.*, *Smith ex rel. Smith v. Bryco Arms*, 33 P.3d 638, 645 (N.M. App. 2001) ("It is well-established in New Mexico negligence law that manufacturers and distributors of products have a duty to use ordinary care in producing products so as to avoid a foreseeable risk of injury cause by a condition of the product or manner in which it is used.").

Accordingly, the rights and liabilities of Plaintiffs and Defendants will be determined by New Mexico law for Plaintiffs' negligence and strict liability claims because, for those claims, New Mexico has the most significant relationship to the occurrence and the parties under the principles stated in the Restatement.[6]

**B.    LOSS OF CONSORTIUM**

As to Mendoza-Rios's claim for loss of consortium, however, the Court concludes that Colorado bears the most significant relationship under the Restatement test.

Loss of consortium "is not just a damage claim but a claim for relief contingent on primary liability." *Doe v. Nevada Crossing, Inc.*, 920 F. Supp. 164, 168 (D. Utah 1996). As stated by the *Nevada Crossing* court, loss of consortium "is separate and distinct from the claim of the injured spouse. It lies in the law of marital relationships. It is derivative only in the sense that unless one's spouse has sustained a personal injury it

---

[6] To be clear, this determination applies to both the "rules of conduct" and the "rules of recovery" for these claims. *See* Restatement § 145; *see also id.* § 171 ("The law selected by application of the rule of § 145 determines the measure of damages.").

does not apply, but it is a separate claim for relief." *Id.* at 168 n.5 (quotation marks and citations omitted). As a separate claim, "it is appropriate to segregate the claim [for loss of consortium] from primary liability for making a choice of law determination." *Id.* In doing so, the Court applies the same Restatement analysis as above.

As opposed to the injury underlying Plaintiffs' negligence and strict liability claims, the injury for Mendoza-Rios's loss of consortium claim took place in Colorado, because that is where the harm to her relationship with Delarosa occurred, despite the fact that the conduct causing the injury took place in New Mexico. *See id.* at 167. For the loss of consortium claim, Plaintiffs' status as Colorado residents takes on added importance since it is the place of their consortium. *Id.* ("For the purposes of a claim of loss of consortium the residence and domicile of plaintiffs is the more relevant situs since it is the place of the consortium of plaintiffs."). That Defendants are New Mexico businesses has no impact on where Plaintiffs have chosen to base their relationship, which is clearly centered in Colorado. As such, Colorado has the most significant relationship to the loss of consortium claim.

This result accords with the "majority view, and the more recent trend, [which] is that the law of the family domicile governs a conflicts question in an action for loss of either spousal or parental consortium." *Wright v. Minter*, 736 F. Supp. 1024, 1028 (W.D. Mo. 1990) (holding that "[w]hile Missouri has a significant interest in the issues involved in the underlying medical malpractice and products liability claims, it has little, if any, interest in the loss of parental consortium claim which arises only because of a familial relationship centered in Iowa"); *Avis Rent-A-Car Sys., Inc. v. Abrahantes*, 559 So.2d

1262, 1264 (Fla. App. 1990) ("Claims for loss of consortium are governed by the law of the state where the marriage is domiciled, rather than by the law of the state where the injury occurred."); *Sullivan v. Bankhead Enters., Inc.*, No. 84-1186-N, 1986 WL 13947, at *7 (D. Mass. Dec. 11, 1986) (unpublished) (even though accident occurred in Maine, loss of consortium claim would be governed by Massachusetts law because "Massachusetts has a stronger interest in determining the rights and liabilities of its residents *vis-à-vis* each other than does Maine"); *Felch v. Air Florida, Inc.*, 562 F. Supp. 383, 386-87 (D.D.C. 1983) (Washington, D.C., where the accident occurred, "does have a strong interest in punishment and deterrence of wrongful conduct causing harm to the plaintiffs within its borders. However, it has little, if not no, interest in the marital (or pre-marital) relationship of Virginia residents."). This result is also consistent with the language of § 146 of the Restatement, which provides that, if for a particular issue in a personal injury action, one state has a more significant relationship, then the local law of that state should govern the resolution of that issue.

      The Court determines that it has reached the correct result notwithstanding the language in Restatement § 158 comment a., which states that "when a spouse suffers personal injury the law selected by application of the rule of § 145 should determine whether the other spouse may recover for loss of consortium . . . ." Although § 158(1) states that the "law selected by application of the rule of § 145 determines whether the interest affected is entitled to legal protection," § 145 goes on to state that the "applicable law will usually be the local law of the state where the **injury** occurred." Restatement § 158 (emphasis added). In the instant case, as already mentioned, the

13

loss of consortium injury suffered by Mendoza-Rios – in the form of loss of Delarosa's companionship, services, and conjugal affection – occurred in Colorado, where Plaintiffs live. Further, comment a. also explains that "[t]he state where the injury occurred has a relatively greater interest, and the state where the wrongful conduct occurred has a lesser interest, in the question whether actionable injury has been sustained than in whether the defendant's conduct was tortious." *Id.* § 158 cmt. a. Such is the case here. Defendants' allegedly wrongful conduct occurred in New Mexico, and Delarosa suffered personal injuries there. However, the injury to Plaintiffs' consortium occurred in Colorado. *See Nevada Crossing, Inc.*, 920 F. Supp. at 168 (although personal injury occurred in Nevada, Utah law would be applied to loss of consortium claim, because that was the state in which the plaintiffs' "marital union was located").

Accordingly, as to Mendoza-Rios's claim for loss of consortium, the Court will apply Colorado law.

### III. CONCLUSION

For the foregoing reasons, it is ORDERED that "Defendant Coyote Pumping Services, Inc.'s Motion for Application of Colorado Law to Plaintiff Antonio Delarosa's Claims" (Doc. # 37) is DENIED. It is

FURTHER ORDERED that, in keeping with the "Memorandum on Choice of Law" (Doc. # 36), filed by Plaintiffs Antonio Delarosa and Rosanna Mendoza-Rios, the Court will apply New Mexico law to Plaintiffs' negligence and strict liability claims; however, the Court will apply Colorado law to Mendoza-Rios's claim for loss of consortium. It is

15

FURTHER ORDERED that Plaintiffs' "Request to Supplement Reply Brief on Choice of Law" (Doc. # 46) is DENIED.

DATED:  August   20  , 2013

BY THE COURT:

*Christine M Arguello*
_____
CHRISTINE M. ARGUELLO
United States District Judge